GRAVER TANK & MFG. CO., INC. *v.* MAHER.

[No. 19,022. Filed June 13, 1958. Rehearing denied October 31, 1958. Transfer denied January 14, 1959.]

*Fred F. Eichhorn,* of Gary, for appellant.

*Max Cohen,* of Gary, for appellee.

ROYSE, J.—On January 8, 1958, this court heard oral argument of this case. After several conferences four judges were unable to agree on the question of fact and law presented. On February 21st, this year, in a memorandum opinion we affirmed the decision of the Industrial Board. 147 N. E. 2d 598. Appellant filed its petition to transfer to the Supreme Court. On May 12th that Court dismissed the petition to transfer and remand the case back to this Court to continue it until the next term and if then a majority of this Court cannot agree, to follow the procedure provided by Sec. 2-3232, Burns' 1946 Repl.[1]

---

1. "Whenever, on the hearing of an appeal, one of the judges of the Supreme Court has been of counsel in the cause, or is otherwise incompetent to participate in the decision, and the remaining judges are equally divided, the cause shall be continued to the next term; and if, then, the judges shall be equally divided, the judgment shall be affirmed without costs, and in such case, each judge shall give his written opinion of each point in the case arising upon the record, which shall be reported among the cases decided by the Supreme Court."

Pursuant to that mandate we have reconsidered the question and now a majority have reached agreement. We therefore proceed to a consideration of the question presented.

The appellee was awarded compensation by the Industrial Board of Indiana for an accidental injury to his person while engaged in the discharge of his duties as a welder in the employ of the appellant who, here, challenges the validity of said award on the theory that the Industrial Board had no jurisdiction of the subject matter of the litigation. In support of this contention the appellant says that the undisputed evidence compels the conclusion that it is an Indiana corporation and that it employed the appellee, a non-resident of the State of Indiana, by a contract made in Nebraska to be performed in Nebraska, and that while so engaged he suffered the accidental injury here involved. If such be the facts the Indiana Workmen's Compensation Act has no application and the award must be reversed. *Elkhart Sawmill Co.* v. *Skinner* (1942), 111 Ind. App. 695, 42 N. E. 2d 412; *Calkins* v. *Service Spring Co.* (1937), 103 Ind. App. 257, 7 N. E. 2d 54.

Such being the rule, let us examine the facts which the evidence most favorable to the appellee tends to prove. During the period involved in this controversy the appellee was a resident of Cicero, Illinois. He was then and is now a married man with a wife and two children. He is a welder by trade and some time in the early part of 1954 he talked over the telephone with one Walter Ross "who was a kind of personnel man" employed by the appellant in its plant in East Chicago, Indiana. He asked Ross if they, meaning the appellant, could use a welder over there as he was interested in getting a job somewhere in the Hammond

area. Ross told him to come over to East Chicago and talk to him; that he was pretty sure that he could use him in that area if tests proved him to be a competent welder. He later went to the appellant's plant in East Chicago and took the welding tests for which he was paid at the rate of $2.90 an hour and after which he had another conversation with Ross. During the second conversation Ross told him he had passed the tests but that the only job open at the time was in Donophin, Nebraska. The appellee told Ross he did not want to work in Nebraska and started to leave the premises when Ross called him back and asked him to take the Nebraska job for two or three weeks after which "he could have something back here." Upon this representation he agreed to go to work for the appellant in Donophin, Nebraska, where the appellant had a contract to install a series of large sump tanks. He arrived in Donophin on the last of April or the first part of May, 1954, where he reported to the appellant's general foreman in charge of the Donophin job, who had him sign an application for work and thereupon assigned him to welding a sump tank during the course of which he suffered the accidental injuries for which compensation was adjusted by the award in controversy.

After his injuries he worked about two weeks longer in Donophin, during which time he inquired of the foreman on two occasions if Ross "had fixed anything in Indiana yet" and was told no. As his shoulder was giving him considerable trouble, he decided to return to his home in Cicero. The day after he got back he called Ross in reference to the Indiana job that had been promised him and was told that there was no opening as yet but that he would be called as soon

as there was anything for him. He has done no work for the appellant since leaving his job in Donophin. He said the situation as far as welding is concerned, "when a job is completed we are done. . . ."

This court, in the case of *Elkhart Sawmill Company* v. *Skinner, supra,* pp. 698, 699, in a well-reasoned opinion reversing an award of the Industrial Board where a similar question was presented, we quoted with approval the following from the case of *Calkins* v. *Service Spring Co., supra:*

" 'It is well settled in Indiana that the rights and duties provided for in the Workmen's Compensation Act are contractual, that is to say, ■ that these rights and duties adhere to and must of necessity spring out of contract. It would therefore seem to follow that these rights and duties would, in so far as our Compensation Act is concerned, attach only to an Indiana contract or to a contract made in contemplation of performance, or at least part performance in Indiana. An apparent exception seems to be made in those cases where the employment is of a transitory nature.'

"Speaking further on this subject, our court has held:

'. . . that in order for such a contract to be governed by the Indiana Workmen's Compensation Law it must be an Indiana contract, at least ■ to the extent that it be made in contemplation of performance or at least part performance in Indiana, or unless the parties specifically agree to be bound by the Indiana law.' *Fisher* v. *Mossman-Yarnelle Co.* (1938), 105 Ind. App. 22, 24, 13 N. E. 2d 343."

The majority of this Court now feel this case is clearly within the rule announced and approved ■ in those cases. Therefore, the Industrial Board did not have jurisdiction of this case.

Award reversed.

Pfaff, C. J., and Crumpacker, J., dissenting, with opinion to follow.

DISSENTING OPINION.

CRUMPACKER, J., dissents with PFAFF, C. J., concurring.—The facts recited in the court's opinion clearly justified the Industrial Board in concluding that the contract of employment between the appellant and the appellee was made "in contemplation of . . . at least part performance in Indiana" and therefore said Board had jurisdiction of the subject matter of this litigation and its award should be affirmed. *Fisher* V. *Mossman-Yarnelle Co.* (1938), 105 Ind. App. 22, 13 N. E. 2d 343. Certainly said facts do not compel a conclusion that the parties to the employment contract contemplated that no part of it would be performed in Indiana—a situation necessary if the Board's award is to be reversed.

NOTE.—Reported in 151 N. E. 2d 163.